BANKRUPTCY APPELLATE PANEL
OF THE SIXTH CIRCUIT

FILED
Jul 24, 2018
DEBORAH S. HUNT, Clerk

In re:  MAXIMUS III PROPERTIES, LLC,  )
                                       )        O R D E R
              Debtor.                  )

Before: HARRISON, HUMPHREY, and OPPERMAN, Bankruptcy Appellate Panel Judges.

In a case converted from Chapter 11 to Chapter 7, the debtor and appellant, Maximus III Properties, LLC ("Maximus"), appeals an order of the bankruptcy court authorizing the private sale to Raiders Trading Limited LLC (the "Purchaser") of various parcels of real property located at 408 Dana Street, Warren, Ohio and certain personal property of the estate located on that real property (collectively, the "Property") under 11 U.S.C. § 363. The Purchaser paid the following consideration: $175,000 in cash; a withdrawal of a proof of claim filed by the Purchaser's predecessor or affiliate[1] in the amount of $1,973,942.50; an assumption by the Purchaser of all city and county taxes and penalties due on the Property to Trumbull County or the city of Warren; an assumption by the Purchaser of any amounts due to the Ohio Department of Job and Family Services and the Ohio Bureau of Workers Compensation; and, finally, the Purchaser's agreement to indemnify and hold the bankruptcy estate harmless from any liability associated with the environmental conditions of the real property. Ninety thousand dollars was held in escrow by the Trustee to pay a secured creditor, Saucon Resources, LLC, which resolved Saucon's objection to the sale. Besides Saucon's objection, the only other persons or entities who objected to the sale were Maximus and Maximus's sole member, Sergio DiPaolo ("DiPaolo"). The bankruptcy court found that DiPaolo lacked standing to object to the sale.

Maximus appealed the bankruptcy court's order authorizing the sale, arguing that the Property was not appraised, the Property was sold at a fraction of its value, and the sale was not

---

[1] During the bankruptcy, Dasher Lawless Automation, LLC ("Dasher") was the tenant of the Property. Both Dasher and the Purchaser were represented by the same counsel and Dasher supported the sale to the Purchaser on the record.

commercially reasonable and was influenced by local politics. After stating on the record that no timely objection to the waiver of the 14-day stay under Federal Rule of Bankruptcy Procedure 6004(h) was filed, the bankruptcy court waived the stay of the sale that otherwise would have been provided by that Rule.

Following a timely notice of appeal, Maximus moved this Panel to stay the sale order pending appeal pursuant to Federal Rule of Bankruptcy Procedure 8007(b). In addition, DiPaolo supported the stay motion through a letter to the Panel. The motion has been opposed by the Chapter 7 Trustee, Richard G. Zellers (the "Trustee"), and the Purchaser. The Trustee also moved to strike DiPaolo's letter, asserting that he lacked standing.

The Trustee's response disclosed that the sale of the real property was closed no later than June 20, 2018, with the issuance of a deed transferring the real property and a bill of sale transferring the personal property along with the Purchaser's cash payment. Based upon the Trustee's response, the Panel entered a show cause order to determine whether this appeal was statutorily moot under 11 U.S.C. § 363(m) as a result of the consummation of the sale and, therefore, should be dismissed for lack of jurisdiction.

Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). The Sixth Circuit has interpreted § 363(m) in multiple decisions, most recently in *Brown v. Ellman (In re Brown),* 851 F.3d 619 (6th Cir. 2017). Section 363(m) reaches beyond the typical "case or controversy" requirement of the federal courts and moots appeals of a sale under § 363 when the property has already been conveyed in good faith to a bona fide purchaser for value. *Brown*, 851 F.3d at 622. This mootness principle protects good faith purchasers from sales being modified by an appellate court. *Id.* Some circuits have determined that all sales in which the property has been conveyed to such a purchaser are per se moot. However, the Sixth Circuit has taken a somewhat more flexible approach in the recent *Brown* decision. Following the Third and Tenth Circuits, the *Brown* decision held that statutory mootness requires

the trustee to prove that no effective relief can be granted on appeal "without affecting the validity of the sale." *Id.* at 623.[2] In short, the sale cannot be undone; however, if effective relief may be addressed by an application of the proceeds or consideration for the sale, the appeal is not statutorily moot. In the instance of the *Brown* appeal, the Sixth Circuit found it was not statutorily moot under § 363(m) because the issue of the debtor's exemption could be addressed from the proceeds of the sale.

That said, two questions are presented to the Panel: 1) does the record support a finding that the Purchaser proceeded with the sale in good faith, allowing for the invocation of the protection of § 363(m) and, if so, 2) is there any effective relief that can be afforded Maximus out of the consideration for this completed sale?

On the first question, the Bankruptcy Code does not define good faith purchaser. *Made in Detroit, Inc. v. Official Comm. of Unsecured Creditors (In re Made in Detroit, Inc.)*, 414 F.3d 576, 581 (6th Cir. 2005). However, the Sixth Circuit has stated that a lack of good faith can be shown by " 'fraud or collusion between the purchaser and the seller or the other bidders, or that the purchaser's actions constituted an attempt to take grossly unfair advantage of other bidders.' " *Id.* (citation omitted). In general, good faith " 'speaks to the integrity of [the purchaser's] conduct in the course of the sale proceedings.' " *Id.* (citation omitted).

The bankruptcy court made no express finding of good faith. However, in considering the question of the Purchaser's good faith, the Panel reviewed the sale order, the bankruptcy court's order resolving the objections to the sale, the transcript of the May 22, 2018 sale hearing,[3] and the

---

[2] The Purchaser suggests that the holding in *Brown* only applies if the sale has not been completed. But § 363(m) is triggered in part by the conveyance of the property to a bona fide purchaser. *Official Comm. Of Unsecured Creditors v. Anderson Senior Living Prop., LLC* (*In re Nashville Senior Living, LLC* ), 620 F.3d 584, 591 (6th Cir. 2010). ("Subsection (m) requires, then, that when an appellant has failed to obtain a stay from an order that permits a sale of a debtor's assets, *and when the debtor has consummated that sale with a purchaser who acted in good faith*, the appellant may proceed no further.") (citations and internal quotation marks omitted; emphasis added). As the sale cannot be undone, the question becomes whether any effective relief can be otherwise provided to Maximus. As explained in this order, unlike *Brown*, no effective relief is possible through this appeal.

[3] The entire transcript of the sale hearing was filed on the bankruptcy court's docket, but was not designated by a party as part of the appellate record. However, the court reviewed it to have a complete understanding of what occurred in the bankruptcy court. *See* Fed. R. Bankr. P. 8009(e)(2)(C) ("the court where the appeal is pending" may supplement the record with material information omitted by error or accident). A partial transcript was also filed with the BAP by the Purchaser as an attachment to a recent filing.

various briefs filed by the parties with the BAP. The Trustee told the bankruptcy court at the sale hearing that he sought a stalking horse bid on the Property from county and city officials, but no such offer was received because of environmental concerns connected to the real property. May 22, 2018 Transcript, Case No. 17-41723, ECF No. 184 (Bankr. N.D. Ohio) at 8. The Trustee informed the court that he also sought offers from other individuals and marketed the Property to potential buyers through an auction house, but received no offers. *Id.* The Trustee sought to auction the Property after the bankruptcy court rejected an earlier sale motion, but abandoned that strategy in favor of this private sale because he was unable to receive a stalking horse bid for the $600,000 minimum required. *Id.* The Trustee even indicated insurance agents told him the Property would not be insured by the companies they represent and had engineers tell him to abandon the Property. *Id.*[4] Remediation costs could be in excess of $2,000,000. *Id.* at 8–9.

At the sale hearing, counsel for Maximus argued the sale should not go forward. First, he expressed concern that certain of the personal property included in the sale may belong to DiPaolo as opposed to Maximus, the debtor whose assets were being sold. The court rejected this contention for not proceeding with the sale, noting that only whatever interest the bankruptcy estate held in the personal property was being sold and that any dispute concerning the personal property not resolved by DiPaolo and the Purchaser would be resolved by a state court. Accordingly, the bankruptcy court would not need to address any dispute over ownership of the personal property.

Also, Maximus raised concern with the purchase price for the Property. Counsel stated he had not seen an appraisal of the Property, but did not suggest any specific value for the Property. The bankruptcy court denied the Trustee's first motion to sell the Property after Maximus asserted that there was another entity interested in the purchase of the Property. However, despite giving Maximus the opportunity to bring that party or another potential purchaser to the table, Maximus failed to do so. Despite that background, Maximus's counsel insisted that a sale to another entity would render a much higher price, but the court noted no such buyer existed. *Id.* at 23.

---

[4] Abandonment may have been difficult. *See Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 507, 106 S. Ct. 755, 762 (1986) (property may not be abandoned "in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards."). In any event, the sale hearing made clear that the environmental concerns were a barrier to finding a buyer at a higher price.

No. 18-8024

- 5 -

Maximus has continued the inadequate price argument on appeal based upon a pre-petition asset purchase agreement with a different party for $1,750,000 that was never closed. But, besides the obvious fact this sale price is no longer on the table,[5] the consummated sale included an assumption of certain liens, tax obligations, penalties and environmental liabilities by the Purchaser, all of which constituted valuable consideration. There was no evidence presented to the bankruptcy court of collusion by the Purchaser, or some effort to chill a sale at a better price. Instead, the court was faced with a single bona fide offer, and nothing beyond speculation from Maximus to suggest the sale process was not in good faith. The Trustee stated in various ways that no other options were available to the estate. Without specific evidence of collusion or bad acts by the Purchaser during the sale process, this Panel cannot second-guess the fiduciary judgment of the Trustee or the decision of the bankruptcy court. Therefore, the record supports a finding that the Purchaser proceeded in good faith and the sale cannot be unwound.[6]

Having determined the record supports a finding that the Purchaser proceeded in good faith, the question becomes whether there is any *Brown*-type alternative relief that is available to Maximus through this appeal since the sale cannot be unwound. However, Maximus's arguments are based on the unwinding of the sale. The argument attacks the consideration paid and suggests that the funds held in escrow could be returned to the Purchaser. Simply, the only relief available that would benefit Maximus is a sale at a higher price to pay all the estate's creditors and result in a dividend to Maximus. But as *Brown* makes clear, the adoption of this flexible standard of mootness does not include affecting a good faith sale that has been consummated. Maximus suggests that there is a question as to the finality of the sale by raising a question as to whether the Purchaser has paid certain property taxes or other obligations. Even supposing these obligations

---

[5] The Trustee noted that the asset purchase agreement had a condition precedent concerning due diligence regarding environmental concerns. Transcript at 14. *See also* Asset Purchase Agreement, Section 3.1 (Exhibit to Debtor's Objections to Trustee's Motion for Order Authorizing Private Sale), Case No. 17-41723, ECF No. 146 (Bankr. N.D. Ohio) (providing for a 180-day period for the purchaser to inspect the property for environmental or other concerns).

[6] Consummation of a sale after an appeal is filed but before a stay of the sale is issued does not negate the good faith of the purchaser. 11 U.S.C. § 363(m); *Official Comm. Of Unsecured Creditors v. Anderson Senior Living Prop., LLC* (*In re Nashville Senior Living, LLC*), 620 F.3d 584, 591 (6th Cir. 2010).

remain outstanding,[7] they have been assumed by the Purchaser and have no effect on the finality of the sale. The sale was consummated through the Trustee's delivery of the deed and bill of sale to the Purchaser and the Purchaser's payment of the consideration.

Accordingly, the court finds this appeal is statutorily moot pursuant to 11 U.S.C. § 363(m) and, therefore, is **DISMISSED** for lack of jurisdiction. Maximus's pending motion for a stay pending appeal and the Trustee's motion to strike DiPaolo's letter are both determined moot.

ENTERED BY ORDER OF THE PANEL

Deborah S. Hunt, Clerk

---

[7] The Trustee indicated in his most recent filing that arrangements were made concerning the property taxes, and both the Ohio Bureau of Workers Compensation and the Ohio Department of Job and Family Services were paid.